Matter of Baby A. (Mary B.L.--Robert A.L.)
2026 NY Slip Op 02759
May 1, 2026
Appellate Division, Fourth Department
Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.
This decision is uncorrected and subject to revision before publication in the Official Reports.

IN THE MATTER OF BABY A. AND BABY B. MARY B.L. AND ROBERT A.L., PETITIONERS-RESPONDENTS; ISABELLA F., RESPONDENT-RESPONDENT. MARY HOPE BENEDICT, ESQ., ATTORNEY FOR THE CHILDREN, APPELLANT.

Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department
Decided on May 1, 2026
325 CAF 25-01788
Present: Lindley, J.P., Bannister, Montour, Greenwood, And Hannah, JJ.

MARY HOPE BENEDICT, BATH, ATTORNEY FOR THE CHILDREN, APPELLANT PRO SE.
THE ABBATOY LAW FIRM, PLLC, ROCHESTER (DAVID M. ABBATOY, JR., OF COUNSEL), FOR PETITIONER-RESPONDENT MARY B.L.
JON M. STERN, ROCHESTER, FOR PETITIONER-RESPONDENT ROBERT A.L.
KATHARINE F. WOODS, ROCHESTER, FOR RESPONDENT-RESPONDENT.

Appeal from an order and judgment (one paper) of the Family Court, Steuben County (Mathew K. McCarthy, A.J.), entered October 20, 2025, in a proceeding pursuant to Family Court Act article 5-C. The order and judgment, inter alia, adjudged that petitioners are the only legal parents of the subject children and directed that custody of the subject children be transferred to petitioners.
[*1]
It is hereby ORDERED that the order and judgment so appealed from is unanimously reversed on the law without costs and the matter is remitted to Family Court, Steuben County, for further proceedings in accordance with the following memorandum: In February 2023, petitioners Mary B.L. (Mary) and Robert A.L. (Robert) purportedly executed a surrogacy agreement with respondent Isabella F. (Surrogate) to carry to term two embryos, Baby A and Baby B. Baby A and Baby B were expected to be born on or about November 26, 2023. In August 2023, petitioners petitioned for a judgment of parentage pursuant to article 5-C of the Family Court Act (see Family Ct Act § 581-203). Family Court (Watches, J.), found that the petition and accompanying documents, including the surrogacy agreement, met the requirements of the statute and granted the petition, issuing an order and judgment of parentage (2023 judgment of parentage) declaring, among other things, that upon the birth of Baby A and Baby B, petitioners would be the only legal parents of the children (see § 581-203 [c] [1-4]; [d] [1]).
Shortly thereafter, the attorney representing petitioners learned that Robert had not signed the surrogacy agreement and that he was altogether unaware of the existence of the surrogacy agreement and the parentage proceeding. Petitioners' attorney notified the court and sought to withdraw from her representation of petitioners in the matter. The court (Roche, J.), acting sua sponte, entered an order (rescission order) that, inter alia, rescinded the 2023 judgment of parentage in its entirety, directed that custody of Baby A and Baby B not be transferred to petitioners upon their birth, added the Steuben County Department of Social Services (DSS) to the matter as an interested party, and assigned an Attorney for the Children (AFC).
Mary, Robert, and the Surrogate executed a new surrogacy agreement. Baby A and Baby B were born shortly thereafter. The children were placed in the care of DSS and then placed with a foster family, with whom they have continued to reside for over two years.
In April 2025, Robert moved to vacate the rescission order, asserting, among other things, [*2]that the order was entered sua sponte by the court without a hearing, application, or notice and solely on the basis of an ex parte conversation with petitioners' former attorney. The court (McCarthy, A.J.), granted the motion but noted that vacating the rescission order was not dispositive of all the issues involving the children.
The AFC subsequently moved to vacate the 2023 judgment of parentage—which was effectively revived upon the vacatur of the rescission order—and to dismiss the parentage petition on the ground that the documentary evidence established as a matter of law that the statutory requirements of Family Court Act article 5-C were not met. The court denied that part of the AFC's motion for summary judgment dismissing the parentage petition and reserved decision, pending a hearing, on that part of the motion seeking vacatur of the 2023 judgment of parentage. Prior to the date of the scheduled hearing on the parentage petition, however, the court, over the objection of the AFC, granted the parties' request to submit affidavits in lieu of holding the hearing. Upon its consideration of the issues raised by the parties and the AFC in their affidavits, the court held that, because the intentions of the parties to the surrogacy agreement were not in dispute, the best interests of the children did not need to be considered. As relevant here, the court thus vacated the 2023 judgment of parentage and ordered that a new order and judgment of parentage be issued declaring petitioners to be the legal parents of Baby A and Baby B. The AFC appeals from the ensuing order and judgment of parentage (2025 judgment of parentage), which, inter alia, declared that petitioners are the only legal parents of Baby A and Baby B and ordered the immediate transfer of the children to petitioners' custody. This Court granted a stay of the 2025 judgment of parentage pending this expedited appeal.
Preliminarily, we reject petitioners' assertion that the appeal must be dismissed. Petitioners argue that the AFC cannot maintain the appeal on behalf of the children, under the circumstances of the case, because petitioners and the Surrogate are the only necessary parties to the proceeding and are in agreement that petitioners are entitled to be the legal parents of Baby A and Baby B. Contrary to petitioners' suggestion, we conclude that a proceeding pursuant to Family Court Act article 5-C is akin to a paternity proceeding, not a custody proceeding, inasmuch as the proceeding is not intended to determine custody between the children's legal parents but is instead the means by which parentage is legally established in the first place (see Family Ct Act § 581-101). As in a paternity proceeding, which may be commenced by a child (§ 522) and in which an AFC may appeal on behalf of the child (see generally Matter of White v Wilcox, 109 AD3d 1145, 1146 [4th Dept 2013], lv dismissed in part & denied in part 22 NY3d 1085, 1086 [2014]), a child or the child's representative may commence a parentage proceeding pursuant to a surrogacy agreement (see § 581-201 [c] [1], [6]). Moreover, although the AFC is not among the statutorily defined "necessary parties" to a proceeding for a judgment of parentage of a child conceived pursuant to a surrogacy agreement (§ 581-203 [b]), we note that the appointment of an AFC will be unnecessary in most proceedings inasmuch as the surrogacy agreement, if done properly, will meet the statutory requirements and will be enforceable, permitting the court to issue a judgment of parentage (see generally §§ 581-203 [c], [d]; 581-403). However, where, as here, the surrogacy agreement does not meet the statutory requirements to be enforceable, the best interests of the child become relevant to the parentage determination (see § 581-407), and the court is empowered to appoint an AFC to help protect the child's interests (see § 241). We conclude that the AFC has the authority to bring this appeal as part of that representation.
The AFC contends that the court erred in refusing to hold a hearing and in failing to consider the best interests of the children in making its parentage determination. We agree. Family Court Act § 581-407 provides that if the surrogacy agreement "does not meet the material requirements of [article 5-C], the agreement is not enforceable and the court shall determine parentage based on the intent of the parties, taking into account the best interests of the child."
Here, there is no real dispute that neither surrogacy agreement meets the material requirements of Family Court Act article 5-C. The original surrogacy agreement is unenforceable because it was not signed by Robert (see Family Ct Act § 581-403 [a] [1]; [d]; see also § 581-402 [b] [3]). The second agreement is unenforceable because it was not executed prior to "the commencement of medical procedures in furtherance of embryo transfer" (§ 581-403 [b]). Thus, the court was required to determine parentage "based on the intent of the parties, taking into account the best interests of the child[ren]" (§ 581-407).
Here, the court considered the intentions of the parties and determined that the intent weighed heavily and exclusively in favor of Mary and Robert. That determination is not contested by the AFC on appeal. Indeed, all three parties to the second surrogacy agreement—Mary, Robert and the Surrogate—agree that their intent was for Mary and Robert to be the children's parents, and none of them contemplated anyone else becoming a parent. We agree with the AFC, however, that on this record the court failed to give due consideration to the best interests of the children as required by the statute (see Family Ct Act § 581-407; see also § 581-701; Matter of Anonymous, 85 Misc 3d 676, 677 [Sup Ct, NY County 2024]). We therefore reverse the 2025 judgment of parentage, and we remit the matter to Family Court to hold an immediate hearing at which the court, in making its parentage determination, must consider evidence of the intent of the parties, taking into account evidence pertaining to the best interests of the children.
We have considered the AFC's remaining contention and conclude that it is without merit.
Entered: May 1, 2026
Ann Dillon Flynn
Clerk of the Court